IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

CRESCENCIO VASQUEZ #1441545      §

v.      §      CIVIL ACTION NO. 6:11cv86

SGT. J. CHILDRESS, ET AL.      §

<u>MEMORANDUM OPINION AND ORDER OF DISMISSAL</u>

The Plaintiff Crescencio Vasquez, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. 636(c). As Defendants, Vasquez originally sued Sgt. J. Childress, Sgt. Ricky Smith, Officer Steven Wingate, Sgt. Michael Owens, Lt. Robert Hazelwood, Lt. James Culpepper, and Officer Paula Byrd; of these, Chidress, Smith, Byrd, and Owens were ordered to answer. The United States Marshal was directed to effect service upon the Defendants Smith and Childress, and was able to do so upon Smith; however, service apparently has not been accomplished upon Childress. Smith, Owens, and Byrd have answered the lawsuit and have filed a motion for summary judgment, to which Vasquez has filed a response.

In his complaint and at an evidentiary hearing, Vasquez testified that on April 1, 2009, Byrd and Owens refused to provide him with his required insulin. He said that this was done "strictly on the basis of race." Vasquez indicated that this took place between 3:00 and 7:00 p.m.

At 7:30 p.m. that day, Vasquez says that he was in the dayroom on P Wing. He was feeling bad and having irregular breathing and heart rate, and feared that he was going to have a stroke or heart attack, so he broke out three windows with his cane. Lt. Hazelwood handcuffed him and took him into the hallway. Officer Wingate had a video camera and was filming the broken windows.

1

Vasquez was trying to explain his condition to Sgt. Childress in a "non-threatening, non-belligerent manner" when Childress struck him in the face with his closed fist. Vasquez fell to the floor and Sgt. Smith jumped on him and beat him with his knee and fist.

Vasquez states that a wheelchair was nearby, which he says shows that the officers had intended the assault. He says that he received a disciplinary case for attempting to assault Childress and destruction of state property. Although he was charged with attempting to assault Childress, Vasquez notes that he was handcuffed at the time. He says that he was not physically or mentally able to attend the disciplinary hearing and was convicted on the charges.

Nurse Tara Patton, a TDCJ correctional nurse also present at the evidentiary hearing, testified that a physical examination of Vasquez after the incident showed that he received a 6 centimeter by 6 centimeter (about 2 1/3 inches) contusion on his forehead as well as a small amount of bruising. She stated that he received insulin twice that day, in the morning and in the evening.

Testimony at the evidentiary hearing showed that the video of the incident did not come out. Vasquez testified that Major Owens received a letter from Governor Rick Perry requesting an investigation into the incident and that Owens called Vasquez in, but Vasquez would not cooperate when he learned that the video did not come out; he says that Owens told him that the video had been destroyed.

Vasquez explained that he was suing Officer Wingate for "neglect," saying that Wingate should have filed a report saying that excessive force had been used. He also said that Lt. Hazelwood should have reported the incident and that Lt. Culpepper should have made sure that the camera was working and should have reported the incident.

Vasquez next stated that Byrd and Owens had "precipitated the incident" by refusing him insulin. He asserted that Dr. Clayton had told him that "they're out to get you," but there does not appear to be a notation in the medical records to this effect. Finally, Vasquez said that he was suing Childress and Smith because these officers actually used force upon him.

## The Motion for Summary Judgment

In their motion for summary judgment, the Defendants cite as "undisputed facts" the assertions that Vasquez broke away from an escort and attempted to strike Childress, that Childress defended himself with reasonable force, that Vasquez did not stop resisting when told to do so, Smith used "minimal force" to gain control of Vasquez's legs, and Vasquez kicked at him and only stopped resisting once the leg restraints were applied. As evidence that these facts are "undisputed," the Defendants cite the TDCJ Use of Force Report, the disciplinary case which Vasquez received, and Smith's affidavit.

Next, the Defendants assert that Vasquez's claims concerning the use of force are foreclosed by the disciplinary case which he received, charging him with assaulting Childress by attempting to strike him in the face with his left elbow, which did not result in any injuries. They also contend that Vasquez received only *de minimis* injuries as a result of the use of force and that the force was justified in any event.

Turning to the issue of deliberate indifference, the Defendants contend that there was no evidence that any of them were involved in Vasquez's medical care and that none of them were deliberately indifferent to a serious medical need. They state that Vasquez did not allege even *de minimis* injury resulting from the denial of insulin and that the summary judgment evidence shows that he received two doses of insulin on the date in question.

Byrd and Owens assert that they are correctional officers, not medical personnel; Byrd says that she was a medical transport officer whose duties involved taking inmates to medical appointments in Galveston or Huntsville, not to the clinic at the unit, while Owens states that he is a sergeant at the unit. Byrd and Owens state that inmates are free to report to the clinic to receive insulin before meals and inmates are not escorted to the clinic. Although doors must be opened for the inmates to be able to get to the clinic, Byrd asserts that she never mans these doors, and Owens says that sergeants such as himself typically do not man the doors.

Finally, the Defendants contend that they are entitled to Eleventh Amendment immunity from damages for claims brought against them in their official capacities, and to qualified immunity from damages for claims brought against them in their individual capacities.

<u>Vasquez's Response to the Motion for Summary Judgment</u>

In his response to the motion, Vasquez argues that "numerous material facts" show that the Defendants are not entitled to Eleventh Amendment immunity or to qualified immunity, and that they used excessive and unreasonable force. He concedes that he broke the windows in the dayroom, saying that he was "in fear of a heart attack or stroke" as he knew that he was entering "diabetic shock." He says that Hazelwood placed him in handcuffs and denies breaking away from Childress, but says that he was in "diabetic shock" which made his movements "uncontrollable." Vasquez denies that leg restraints were applied and says that he was taken to the clinic by wheelchair.

Vasquez says that even though a nurse noted only "so-called minor injuries," he, Vasquez, was in "diabetic shock" and thus was unaware that he had a concussion until later. He acknowledges that he received two doses of insulin on the date in question but points out that the second one was only given to him after the incident had occurred.

Vasquez contends that Byrd is a "medical transport officer" and therefore should be trained to recognize a medical emergency. He says that she was "operating a turnkey position in an overtime position" and thus was responsible for opening the doors to let him go to the medical department. Vasquez states that Owens should have seen the necessity to allow him access to the clinic but ordered Byrd not to allow him off the wing or to go to the medical department.

Vasquez argues that even though missing a dose of insulin may not cause physical symptoms, being four hours late for a dose can cause "immediate and severe reactions." He concedes that he did not allege injury, but says that "it is obvious" that he suffered injury, such as going into the diabetic shock that resulted in this cause being filed. He again says that Byrd and Owens treated him with deliberate indifference.

In an attached statement, which is not sworn and thus not competent summary judgment evidence, Vasquez says that Major Owens tried to coax him into signing a "settlement" to resolve the use of force claims, but the document Owens gave him to sign was blank. He states that Lt. Hazelwood claimed that he, Hazelwood, was not the first on the scene, but nonetheless signed a statement describing the incident from the beginning. He argues that Sgt. Smith was "deceptive" in saying that he, Smith, used leg restraints and when Smith denied striking Vasquez in the body. Officer Wingate was seen videotaping the broken windows but falsely claimed that he did not arrive until after the use of force was called, and made a statement about the leg restraints which were not there and intentionally did not videotape the use of force. Vasquez notes that the defendants said that his behavior was "abnormal," indicating that they knew that he was entering into "diabetic shock."

Vasquez goes on to maintain that Byrd's claims that she did not man the door and did not know who was the supervisor in the area are more deceptions, and that Childress' assertions that Vasquez broke away and attempted to assault him are false because Vasquez is disabled and has to use a cane. He claims that Wingate was disciplined for failing to follow procedures, that Smith was punished by being removed from general population, and that Childress was fired or forced to quit. The Use of Force Report shows that Wingate received administrative discipline of three months' disciplinary probation for failing to record the incident; there is no indication that Smith or Childress received any disciplinary action, and in fact the report concluded that excessive force was not used.

<u>Legal Standards and Analysis</u>

<u>The Use of Force Claim</u>

The Defendants first assert that their use of force was justified, arguing that there are "no disputed issues of fact" that Vasquez provoked the incident by pulling away from and attempting to strike Officer Childress. However, in Vasquez's sworn pleadings and testimony, he says that he was complaining of his condition in a "non-threatening, non-belligerent manner" when Childress struck him in the face with his fist, causing him to fall to the floor; Smith then jumped on him and

beat him with his knee and fist. Vasquez's sworn pleadings and testimony are competent summary judgment evidence. <u>Al-Ra'id v. Ingle</u>, 69 F.3d 28, 31 (5th Cir. 1995). To the extent that the Defendants contend that the facts surrounding the use of force incident are "undisputed" or "not subject to reasonable dispute," this contention is without merit. *See* <u>Securities and Exchange Commission v. Recile</u>, 10 F.3d 1093, 1097 (5th Cir. 1994) (evidence and inferences are viewed in the light most favorable to the non-movant when reviewing a motion for summary judgment).

The Defendants next assert that Vasquez's claims concerning the use of force are foreclosed by the disciplinary case which he received, charging him with assaulting Childress by attempting to strike him in the face with his left elbow, which did not result in any injuries. They cite <u>Hadnot v. Butler</u>, 332 Fed.Appx. 206 (5th Cir. 2009).

In that case, the plaintiff Johnny Hadnot asserted that Sgt. Butler and Officer Alexander used excessive force on him while he was being moved from one cell to another. Hadnot stated that the officers would not let him return to his former cell to retrieve his mattress and bedding, and construed his actions as a refusal to enter his newly assigned cell. He also said that the officers got in his face and cursed at him, telling him to get back in the cell. They then forced him to the ground without provocation and began kicking him in the head and back.

Hadnot received a disciplinary case for assaulting an officer and failure to relinquish hand restraints. He forfeited 365 days of good time credits as a result of his conviction in the disciplinary case.

Hadnot brought suit, raising various claims including one for excessive force. With regard to that claim, the district court stated as follows:

> Hadnot seeks monetary damages for a use of force that resulted in a disciplinary conviction and a loss of good-time credits. To recover damages for an allegedly 'unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus [under] 28 U.S.C. § 2254.' <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). A claim for damages that bears a relationship to a conviction or sentence that has not been so invalidated is not

cognizable under 42 U.S.C. § 1983. Id. Therefore, if a judgment in favor of the plaintiff would 'necessarily imply the invalidity of his conviction or sentence,' then the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. Id. In this context, a 'conviction' includes a prison disciplinary proceeding that results in a change to the prisoner's sentence, such as the loss of good-time credits. Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

Hadnot complains that Sergeant Butler and Officer Alexander used excessive force against him on July 11, 2007. As Hadnot discloses in his more definite statement, however, he was convicted of disciplinary charges, including assault on an officer, in connection with the July 11, 2007 incident in which the complained of force was used. (Doc. # 9, at ¶ 20). Hadnot concedes that he lost previously earned good-time credits as a result of this conviction and that the conviction has not been overturned. ( Id. at ¶¶ 20-21).

Hadnot's excessive-force claim would, if true, necessarily implicate the validity of his disciplinary conviction. Because Hadnot's conviction has not been overturned, his civil rights claims against the defendants are barred by Heck. See Edwards, 520 U.S. at 647-48; see also Hudson v. Hughes, 98 F.3d 868, 872-73 (5th Cir.1996) (holding that allegations of excessive force and false arrest are not cognizable under the doctrine in Heck if a successful civil rights claim would call into question the validity of the plaintiff's conviction); see also Sappington v. Bartee, 195 F.3d 234 (5th Cir.1999) (holding that Heck bars a civil rights claim for excessive force and false arrest where the plaintiff has been convicted of assaulting an officer); Donnelly v. Darby, 81 F. App'x 823, 2003 WL 22794388 (5th Cir.2003) (unpublished per curiam) (rejecting excessive force claims from a state prisoner who received a disciplinary conviction arising from the same incident); Powell v. Maddox, 81 F. App'x 476, 2003 WL 22734607 (5th Cir.2003) (unpublished per curiam) (same).

Because Hadnot's claims are not cognizable under 42 U.S.C. § 1983, the complaint must be dismissed with prejudice for failure to state a claim upon which relief can be granted at this time. See Johnson v. McElveen, 101 F.3d 423, 424 (5th Cir.1996) (explaining that claims barred by Heck are 'dismissed with prejudice to their being asserted again until the Heck conditions are met').

Hadnot v. Butler, civil action no. H-08-1304, 2008 WL 4200815 (S.D.Tex., Sept. 9, 2008).

On appeal, the Fifth Circuit stated as follows:

Hadnot also maintains that he has raised a viable Eighth Amendment claim against these defendants because they attacked him without provocation. Hadnot has not shown that his disciplinary conviction has been overturned. See Edwards v. Balisok, 520 U.S. 641, 646-48, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). Further, Hadnot's suit is barred by Heck due to the nature of his claims and allegations. See DeLeon v. City of Corpus Christi, 488 F.3d 649. 656-57 (5th Cir. 2007).

In Powell v. Maddox, civil action no. 2:97cv280 (N.D.Tex., April 15, 2003), the plaintiff

Tony Powell asserted that he was walking with other inmates when the defendant Michael House

singled him out and called him over, subjecting him to verbal abuse for allegedly having run into

House.  Powell tried to explain, and Maddox handcuffed him and verbally abused him.  Powell stated that he did not understand, and Maddox pushed and struck him, trying to take him to the ground.  The defendants House, Wilson, and Atchley helped Maddox by kicking and striking Powell and twisting his legs.  Another defendant, Horn, did nothing to prevent the attack but instead stood by laughing.

Powell received a disciplinary case for turning while handcuffed and attempting to charge at House and Maddox, necessitating a use of force.  The district court held that a grant of relief on Powell's use of force claim would necessarily call into question the validity of the disciplinary determination of guilt, and so this claim was not cognizable under 42 U.S.C. §1983 absent a showing of favorable termination of the disciplinary case.  Because Powell failed to show that the disciplinary case had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, his use of force lacked an arguable basis in law and was frivolous until such time as such a showing was made.

On appeal, the Fifth Circuit stated as follows:

> Powell alleged that prison officials used excessive force on him in an altercation that resulted in his loss of good time credits, among other things.  A prisoner attacking a disciplinary proceeding that resulted in the loss of good time credits cannot bring a 42 U.S.C. §1983 action seeking damages until his 'conviction' in that proceeding has been expunged, reversed, or otherwise set aside.  Edwards v. Balisok, 520 U.S. 641, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997); Clarke v. Stalder, 154 F.3d 186, 189 (5th Cir. 1998) (en banc).  Powell is unable to show that his disciplinary conviction has been set aside.  See Randell v. Johnson, 227 F/3d 300, 301 (5th Cir. 2000).  The judgment of the district court is affirmed.

In the present case, Vasquez received a disciplinary case stating that he "assaulted Sgt. J. Childress by attempting to strike me in the face with his left elbow."  The additional information contained in the offense report says that Childress was escorting Vasquez to the infirmary for a pre-hearing detention physical when Vasquez jerked away and tried to strike him in the face with his left elbow, resulting in a major use of force.  He declined to attend the disciplinary hearing, although he made a statement that the case was "false" because he was handcuffed.  The evidence at the

disciplinary hearing showed that Vasquez had broken out some windows with his cane and then pulled away from Childress and tried to elbow him, and a use of force ensued.

Like Hadnot, Vasquez "maintains that he has raised a viable Eighth Amendment claim against these defendants because they attacked him without provocation." This claim, if proven, casts doubt on the validity of the disciplinary proceeding, in which Vasquez was convicted for pulling away from and attempting to assault an officer. Because Vasquez, again like Hadnot, has failed to show that his disciplinary conviction, including the forfeiture of good time, has been overturned, expunged, or otherwise set aside, his use of force claim is barred by Heck and Balisok, as the Fifth Circuit explained in Hadnot and Powell.

The fact that the disciplinary case makes no mention of Officer Smith does not change the validity of this analysis. In Powell, the plaintiff sued officers Maddox, House, Wilson, and Atchley for use of excessive force, and sued Horn for failing to intervene. The disciplinary case charged him with turning while handcuffed and attempting to charge at House and Maddox, necessitating a use of force. The district court held that a grant of relief to Powell would necessarily call into question the disciplinary determination of guilt, thus foreclosing his civil rights claim until the disciplinary conviction was set aside. The Fifth Circuit affirmed this decision.

Similarly, in Null v. Sanders, civil action no. 2:00cv58, 2001 WL 256111 (N.D.Tex., March 9, 2001, *aff'd* 273 F.3d 1094, 2001 WL 1085077 (5th Cir., August 28, 2001), the plaintiff David Null complained that Officer Rojas initiated an unprovoked and unjustified use of force against him, and Officer Valenzuela joined in. The evidence showed that he received disciplinary cases for striking an officer, trafficking and trading, and refusing to obey an order. In his Section 1983 lawsuit, Null argued that he was not challenging the due process which he received and that if successful, his claims would not demonstrate the invalidity of these disciplinary convictions. The district court disagreed, holding that "it appears that a finding in plaintiff's favor, on his claims against Rojas and Valenzuela, would necessarily imply the invalidity of the disciplinary case for striking an officer."

The district court therefore dismissed Null's claim until he could show that the disciplinary case had been overturned or otherwise set aside.

On appeal, the Fifth Circuit stated as follows:

> Null argues that because he did not lose any good time credits through his disciplinary proceeding, he is no longer "in custody" pursuant to that proceeding so that the requirements of <u>Heck</u> need not be fulfilled. Null has failed to show, however, that he did not in fact lose good time credits as a result of the disciplinary proceeding.

> Consequently, before he could obtain money damages for the alleged assault by Rojas and Valenzuela, Null would have to show that the result of the disciplinary hearing, in which he was charged with striking an officer, has been overturned. As Null concedes that his disciplinary conviction has not been overturned, his claims are barred by <u>Heck</u> and <u>Edwards [v. Balisok]</u>.

The same situation exists in the present case. Vasquez contends that he was peacefully explaining himself when he was assaulted without provocation by Childress and Smith. The disciplinary case says that Vasquez pulled away from Childress and attempted to strike the officer, resulting in a use of force. A finding in Vasquez's favor on his use of force claim would necessarily imply the invalidity of the disciplinary case, in which disciplinary case Vasquez lost 730 days of good time. Thus, Vasquez cannot proceed on his use of force claim without showing that the disciplinary case has been overturned, expunged, or otherwise set aside, which he has failed to do. The Defendants' motion for summary judgment should be granted as to this claim.

## The Denial of Insulin Claim

Vasquez also asserts that "prior to sadistic assault, 1500-1900 hours, CO IV Paula Byrd and Sgt. Michael Owens repeatedly refused me my prescribed and scheduled medication of insulin which is required that I take 2 to 3 times daily, this was done intentionally strictly on the basis of race." At the evidentiary hearing, Vasquez testified that Byrd and Owens had refused to allow him to go to the infirmary, but allowed other diabetics to get insulin. It was not clear if Vasquez was complaining about Byrd and Owens delaying him from receiving insulin only on April 1, 2009, or if he was complaining of delays from before that date.

The TDCJ medical records show that on March 7, 2009, Vasquez received a prescription, presumably a renewal, for U-100 human insulin. The dosage was on a sliding scale depending on Vasquez's blood sugar readings, ranging from two units, for a blood sugar reading of 181 to 250, to 12 units if his blood sugar was 451-500. Vasquez received insulin twice on March 7, 8, 9, and 10. On March 11, his blood sugar was read at 136, and he received only one dose.

Vasquez then received insulin twice on March 12 and 13, and was seen in the clinic once on March 14 but it does not appear that any insulin was provided at that time. He received insulin twice on March 15, 16, 17, 18, and once on March 19, although he refused another dose on that date. He received insulin twice on March 20 and once on March 21, refusing a second dose on that date. On March 22, he was seen in the clinic once but no glucometer reading was recorded and it does not indicate how many units were provided, if any.[1]

Vasquez received insulin once on March 23 and 24, and on March 25, 26, and 28, he was seen once but no glucometer reading is recorded and the record does not indicate how many units were given, if any. He received insulin once on March 27, 29, 30, and 31. On April 1, the day of the incident, Vasquez received four units of N-26 insulin at 4 a.m., and four units of N-30 insulin at 6:25 p.m.

Vasquez's claim against Byrd and Owens is that they refused to allow him to go to the infirmary to get his insulin. The Supreme Court has stated that interference with medical assistance by security officers may state a valid claim if the interference amounts to deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976). The Fifth Circuit has stated that "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." Mendoza v. Lynaugh, 989 F.2d 191, 193

---

[1] On the diabetic flow sheet for these dates, there is a dash in the column headed "FSBS result by glucometer" and in the column saying "Dose / Units," there is a 30, indicating the insulin type, but no indication for the number of units given. On other dates, this column reads, for example, "30/4" where four units of Type N-30 insulin was given, or 26/12 if 12 units of Type N-26 insulin was given. It is not clear whether Vasquez required or received insulin on the days where there is a dash in the glucometer column.

(5th Cir. 1993); *see also* <u>King v . Kilgore</u>, 98 F.3d 1338, 1996 WL 556845 (5th Cir., Sept. 9, 1996) (delay in obtaining medical treatment for an asthma attack was not an Eighth Amendment violation where there were no facts showing substantial harm).

Vasquez was seen in the infirmary by the nurse after the incident, and she determined that he had an abrasion and a contusion on his forehead. Nothing in the medical records supports Vasquez's assertion that he was suffering from "diabetic shock" as a result of a deprivation of insulin lasting no more than a few hours.

When an inmate alleges a serious medical need either for treatment or to avoid certain conditions, the inmate's bare assertion of a serious medical condition is insufficient without medical evidence verifying that the condition exists. <u>Aswegan v. Henry</u>, 49 F.3d 461, 465 (8th Cir. 1995); *accord*, <u>Kayser v. Caspari</u>, 16 F.3d 280, 281 (8th Cir. 1994) (prisoner's self-diagnosis alone will not support a medical conclusion); <u>McClure v. Foster</u>, civil action no. 5:10cv78, 2011 WL 665819 (E.D.Tex., January 7, 2011, *Report adopted at* 2011 WL 941442 (E.D.Tex., February 16, 2011, *aff'd* slip op. no. 11-40272, 2012 WL 1059408 (5th Cir., March 29, 2012) (citing <u>Aswegan</u> and <u>Kayser</u>). Vasquez's bare assertion that he was suffering from "diabetic shock" is insufficient in light of the fact that no medical evidence exists verifying that he was suffering from such a condition.[2] Nor has Vasquez shown that he suffered any other substantial harm as a result of the alleged delays by Byrd and Owens in his obtaining insulin.

Thus, even assuming the truth of Vasquez's assertions that Byrd was responsible for opening the doors and that Owens told her not to let Vasquez go to the clinic, his claim nonetheless fails because he has not met the requirement, as set out by the Fifth Circuit, of showing that the delay in medical care "result[ed] in substantial harm." <u>Mendoza</u>, 989 F.2d at 193. Nothing in the medical records supports Vasquez's assertion that the incident with Smith and Childress was somehow

---

[2]Although Vasquez asserts that he was suffering from "diabetic shock" as a result of being allegedly deprived of insulin, in fact diabetic shock is a condition caused by having too much insulin, rather than not enough. *See* http://diabetes.webmd.com/diabetic-shock-and-insulin-reactions.

caused by the brief delay in receiving insulin which he suffered. An affidavit from Nurse Manager Tara Patton, R.N., states that officers do not escort inmates to the medical departments where these inmates are housed in an area where they have free movement. She notes that a missed dose of insulin might result in no symptoms, and that it is highly unlikely that a dosage of insulin which is delayed by a few hours would have any lasting effect on a patient's health. Vasquez offers nothing to refute this evidence. His claim against Byrd and Owens on this point is without merit.

Vasquez also asserts, in a wholly conclusory manner, that Byrd and Owens refused to allow him to obtain insulin based upon his race. In his complaint, he makes the bald allegation that "this was done intentionally strictly on the basis of race." At the evidentiary hearing, Vasquez says that the officers allowed other inmates to go to the clinic, but did not permit him to do so; however, he offered nothing to show that he was singled out because of his race, nor did he even allege that the inmates who were permitted to go to the infirmary were of a different racial background than his own. Such vague and conclusory allegations are insufficient to set out a constitutional claim. *See* Oliver v. Kanan, 428 Fed.Appx. 481, 2011 WL 2437759 (5th Cir., June 17, 2011, *citing* Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990) (vague and conclusory statements that defendants provided white inmates with proper health care, but denied it to him, fail to state a constitutional racial-discrimination claim); McKnight v. Eason, 227 Fed.Appx. 356, 2007 WL 1334184 (5th Cir., May 4, 2007) (citing Koch in holding that conclusory allegations of racial discrimination do not set out a cognizable equal protection claim); Webber v. Bureau of Prisons, 198 Fed.Appx. 406, 2006 WL 2589152 (5th Cir., September 8, 2006) (allegations of discrimination were conclusory and so the district court did not err in dismissing the equal protection claims). Vasquez's bare and conclusory claims of racial discrimination are without merit as well.

The Claims Against the Unserved Defendants

Byrd, Owens, Smith, and Childress were the only defendants ordered to answer the lawsuit. Of these, Childress was never served because he could not be located. In any event, as set out above, Vasquez's claims against Childress are barred by Heck and Balisok because Vasquez has not shown

13

that the disciplinary case, which charged him with attempting to assault Childress, has been overturned or otherwise set aside.

The Fifth Circuit has held that parties not joining in a successful motion for summary judgment are nonetheless entitled to benefit from that motion. *See* Lewis v. Lynn, 236 F.3d 766, 768 (5th Cir. 2001). This is because, as the Fifth Circuit explained, where a defending party establishes that a plaintiff has no cause of action, the defense generally also inures to the benefit of a defaulting defendant. Lewis, 236 F.3d at 768, *citing* United States v. Peerless Ins. Co., 374 F.2d 942, 945 (4th Cir. 1967); *see also* Armenta v. Pryor, civil action no. 5:06cv76, 2009 WL 331876 (E.D.Tex., Feb. 9, 2009, *aff'd* 377 Fed.Appx. 413, 2010 WL 1849278 (5th Cir., May 10, 2010) (dismissing unserved defendants where the plaintiff's "allegations of retaliation are wholly conclusory and insubstantial, and insufficient to maintain a Section 1983 action," whether the retaliation was carried out by served or unserved defendants). Hence, Childress is entitled to benefit from the motion for summary judgment despite the fact that he was not served with process and thus did not join in the motion.

Similarly, the other unserved defendants, Wingate, Hazelwood, and Culpepper, are also entitled to benefit from the motion for summary judgment, which established that Vasquez lacked a cause of action. In addition, Vasquez's claims against these defendants may be dismissed as frivolous and for failure to state a claim upon which relief may be granted.

Vasquez complained that Wingate failed to properly videotape the incident. At the evidentiary hearing, he stated that he was suing Wingate for "neglect." He also noted that Wingate could have filed a report but did not. In his response to the motion for summary judgment, Vasquez pointed out that Wingate had received administrative discipline for his failure to secure a videotape.

The Fifth Circuit has held that to obtain relief under the Civil Rights Act, 42 U.S.C. §1983, a person must show two elements. These are: (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was done by a person acting under color of state law. Johnson v. Dallas Independent School District, 38 F.3d 198, 199 (5th Cir. 1994). The fact that Wingate did not record the use of force does not show a deprivation of a right

secured by the Constitution or laws of the United States. *See* <u>Kiser v. Dearing</u>, slip op. no. 6:08cv272 (E.D.Tex., May 22, 2009) (unpublished) (available on WESTLAW at 2009 WL 1457693) (fact that the camera operator did not start the camera until the incident was over did not implicate a constitutionally protected liberty interest); *accord,* <u>Trevino v. Johnson</u>, civil action no. 9:05cv171 (E.D.Tex., dismissed as frivolous December 8, 2005, no appeal taken) (dismissing claims against camera operator in use of force claim for failing to set out a constitutional violation); <u>Johnson v. Hamill</u>, civil action no. 6:09cv248, 2009 WL 2982800 (E.D.Tex., September 11, 2009) (partial order of dismissal) (camera operator not liable for failing to turn on video camera in time to record use of force). This is true even if Wingate violated TDCJ rules and policies by failing to make a recording; the Fifth Circuit has held that a violation of prison rules alone is not sufficient to rise to the standards of a constitutional claim. <u>Myers v. Klevenhagen</u>, 97 F.3d 91, 94 (5th Cir. 1996); <u>Hernandez v. Estelle</u>, 788 F.2d 1154, 1158 (5th Cir. 1986). Vasquez's claim against Wingate is without merit.

Vasquez stated that Lt. Hazelwood handcuffed him and took him out into the hallway after he broke the windows in the dayroom. He testified that Hazelwood should have reported the incident, but did not. Even if Hazelwood did not report the incident, Vasquez has failed to show that this amounted to the deprivation of a constitutionally protected right; as Vasquez concedes, the incident was investigated and a use of force report was done. Hazelwood gave a statement for the use of force investigation and also wrote the supervisor summary of the incident. Vasquez has not shown that he suffered any harm through the fact that Hazelwood did not report the incident in the manner which Vasquez thought appropriate. *Cf.* <u>Geiger v. Jowers</u>, 404 F.3d 371, 373-74 (5th Cir. 2005) (no right to have complaints investigated in a manner which the prisoner deems satisfactory). Nor has Vasquez shown any constitutional violation in the fact that Hazelwood handcuffed him and removed him from the dayroom after Vasquez broke out the windows with his cane. His claim against Hazelwood is without merit.

Finally, Vasquez sues Lt. Culpepper, saying that Culpepper should have reported the incident and should have made sure that the camera was working. Vasquez ascribed Culpepper's actions to "neglect."

Vasquez has failed to show any harm in the fact that Culpepper did not report the incident, as the evidence shows that a use of force investigation was conducted. He does not show what would be different had Culpepper reported the incident apart from the use of force investigation. Claims of "neglect" are essentially allegations of negligence, which is not cognizable in a federal civil rights lawsuit under 42 U.S.C. §1983. Daniels v. Williams, 474 U.S. 327, 331-33 (1986). Vasquez's claim that Culpepper should have checked the camera to ensure that it was working lacks merit because the camera was checked after the incident and was found to be in good working condition, which is why Wingate was disciplined for failing to record the incident. Vasquez's claims against Lt. Culpepper are without merit.

Immunity

In their motion for summary judgment, the Defendants invoke Eleventh Amendment and qualified immunity. To the extent that Vasquez may be suing the Defendants in their official capacity, they are entitled to Eleventh Amendment immunity. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 101-02 (1984); *accord*, Hafer v. Melo, 112 S.Ct. 358, 363 (1991); Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) (noting that the Fifth Circuit has "twice held that the Eleventh Amendment bars recovering §1983 money damages from TDCJ officers in their official capacity").

The doctrine of qualified immunity applies to claims for monetary damages brought against a government official in his or her individual capacity. The Fifth Circuit has stated that a qualified immunity defense serves to shield a Government official from civil liability for damages based upon the performance of discretionary functions if the official's actions were reasonable in light of then clearly existing law. Atteberry v. Nocona General Hospital, 430 F.3d 245, 253 (5th Cir. 2005), *citing* Thompson v. Upshur County, 245 F.3d 447, 456 (5th Cir. 2001). To prevail in a §1983

lawsuit, a plaintiff must overcome an officer's defense of qualified immunity. *See* McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (noting that when a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense).

The Fifth Circuit has stated that to discharge this burden, the plaintiff must satisfy a two-prong test. First, he must claim that the defendants committed a constitutional violation under current law, and second, that the defendant's actions were objectively unreasonable in light of the law which was clearly established at the time of the actions complained of. Atteberry, 430 F.3d at 253; Kinney v. Weaver, 367 F.3d 337, 349-50 (5th Cir. 2004). These two prongs may be considered in either order. Saucier v. Katz, 533 U.S. 194, 201 (2001).

In this case, Vasquez has not shown that any actions taken by the Defendants Byrd, Owens, or Smith amounted to a constitutional violation or were objectively unreasonable in light of clearly established law. Consequently, these Defendants are entitled to the defense of qualified immunity.

Conclusion

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Securities and Exchange Commission v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1994); General Electric Capital Corp. v. Southeastern Health Care, Inc., 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P.

To avoid summary judgment, the non-moving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Fifth Circuit has stated that once the moving party has met its burden, the non-movant must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a fair-minded jury that it is

entitled to a verdict in its favor.  ContiCommodity Services, Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

Summary judgment should be granted when the moving party presents evidence which negates any essential element of the opposing party's claim, including a showing that an essential element of the opposing party's claim is without factual support.  First American Bank & Trust of Louisiana v. Texas Life Ins. Co., 10 F.3d 332, 334 (5th Cir. 1994).  The granting of summary judgment is proper if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Caldas & Sons v. Willingham, 17 F.3d 123, 126 (5th Cir. 1994).  Once the movant makes this showing, the burden shifts to the non-movant to come forward with evidence sufficient to establish the existence of a genuine issue of material fact. Caldas, 17 F.3d at 126-27.

Although the Court must draw all inferences in favor of the party opposing the motion, an opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings.  Hulsey v. State of Texas, 929 F.2d 168, 170 (5th Cir. 1991); see also Gordon v. Watson, 622 F.2d 120 (5th Cir. 1980) (litigants may not oppose summary judgment through unsworn materials).  Similarly, a bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact.  Recile, 10 F.3d at 1097 n.15.  A non-movant cannot manufacture a factual dispute by asking the Court to draw inferences contrary to the evidence.  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In short, a properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists.  Hulsey, 929 F.2d at 170, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Fifth Circuit has stated that once the defendants have shifted the burden to the plaintiff by properly supporting their motion for summary judgment with competent evidence indicating an absence of genuine issues of material fact, the plaintiff cannot meet his burden by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only

a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  The Court added that "summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant."  Little, 37 F.3d at 1075.

Where a motion for summary judgment is filed, the movant has the initial burden of proof to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law.  John v. State of Louisiana Bd. of Trustees for State Colleges and Universities, 757 F.2d 698, 708 (5th Cir. 1985).  Once the movant has done so, the burden then shifts to the plaintiff, who must identify specific evidence in the record and articulate the precise manner in which that evidence supports his claims; the district court has no duty to sift through the record in search of evidence to support a party's opposition to summary judgment.  Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996).  As for material facts on which the plaintiff will bear the burden of proof at trial, he must come forward with evidence sufficient to enable him to survive a motion for directed verdict at trial.  Stults, 76 F.3d at 656; see also Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim).

In this case, the competent summary judgment evidence shows that there are no disputed issues of material fact and that the Defendants Byrd, Owens, and Smith is entitled to judgment as a matter of law.  The motion for summary judgment also operates to the benefit of the Defendants Childress, Wingate, Hazelwood, and Culpepper, who were not served and thus did not join in the motion.  In addition, the evidence shows that Vasquez's claims against Wingate, Hazelwood, and Culpepper lack any arguable basis in law and fail to state a claim upon which relief may be granted, and so these claims may be dismissed as frivolous and for failure to state a claim pursuant to 28 U.S.C. §1915A.  It is accordingly

ORDERED that the Defendants' motion for summary judgment (docket no. 48) is GRANTED and the above-styled civil action be and hereby is DISMISSED with prejudice as to all

Defendants except for Smith and Childress. The claims against Smith and Childress are DISMISSED with prejudice until such time as Vasquez can show that the disciplinary case which he received has been overturned, expunged, or otherwise set aside. The granting of this motion for summary judgment inures to the benefit of all of the Defendants, including those who did not join in the motion. It is further

ORDERED that the Plaintiff's claims against the Defendants Hazelwood, Culpepper, and Wingate are also DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. It is further

ORDERED that the dismissal of these claims as frivolous shall count as a strike for purposes of 28 U.S.C. §1915(g). It is further

ORDERED that the Clerk shall provide a copy of this order to the Administrator of the Strikes List for the Eastern District of Texas. Finally, it is

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **25** day of **June, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE